If I may, I'd like to reserve five minutes. So I guess I need to keep an eye here. You just have to keep track of your own time. Thank you. May it please the Court, I'm David Prusner, and it's my honor today to represent the appellants who are investors. Beverly Meyers and Molly Hamrick, the representatives for the appellants, are here. A judgment was entered against them on the basis of a theory that promissory notes that they'd signed had been accelerated and notes that would have been due at the end of the next decade were suddenly due now, and that this liability was literally millions of dollars. And, in fact, an even larger award was entered against them for prejudgment interest because under the theory that they had defaulted, the interest rate went up to an amazing 15%, which is a pretty good rate of return these days. And so it eclipsed and is even larger than the principal amount. So there's no doubt that this judgment was entered under one singular theory, that is acceleration of promissory notes to the present due to a default. In fact, when we complained to Judge Due about the interest, she says, that's the interest rate provided in the promissory notes if there's an event of default. And what's your complaint? Well, yes, if there's an event of default. So if it pleases the Court, I'd like to address two topics. One is, was there an event of default? And two, did we waive this defense? Okay. What does the – what default is the language referring to, then, in your view? Well, in our view, there is no language that you can point to in this promissory note that would lead to a conclusion that there was a default. The pretrial order identified two fact issues to be determined by the jury. One is whether we had made our payments. And that was where we stood at the beginning and the end, and now is we made our payments under the note. Now, it's a balloon note, so, you know, we made payments during the first year, and then you get a recess for, like, 25 years, and then you make a big payment at the end. But the second fact to be determined in the pretrial order by the jury, a factual question, is whether we had disavowed our notes. Now, that's nowhere in the promissory note, but that was their theory. So, you know, the pretrial order has both theories. Okay. So you're arguing that there was no default. There was no default. The only way there could be a default was if you failed to make a payment, because the only obligations in the promissory notes, there's only two obligations. One is an obligation to sign some related agreements. Okay. That's in there. So that would be back in 2005 when you signed it. After that, literally, the only obligation, there's not an obligation to insure collateral, to do anything. Your only obligation is to make payments when they were due. We made the only payments. So our fact issue that we put in the pretrial order was whether we made payments. And so Mr. Vitullo, the trial lawyer, stood up in front of the jury at a very critical point of the trial, I'll come back to this, and made the astounding statement of, jury, we did not default because we made our payments. Now, that may not sound like a very exciting defense, but that's the defense we asserted in the pleadings, in our opening statement, in the Rule 50A motion and the Rule 50B motion. Their theory, fact issue number two in the pretrial order was, did these investors disavow their notes? Well, we've always said, literally, there's not a term, there's no term that refers to disavow or repudiate or say something bad. It's a promissory note. You either pay it or you don't. They have never been able to point to a single sentence in the promissory note or any agreement that says this refers to disavow. Counsel? The pretrial order. Judge Gould, if I could interject just a simple question. And I may be oversimplifying this, but is it your position that an anticipatory breach is not an event of default? Yes. The agreement. Yes, Your Honor. And there's been only two courts that have ever specifically considered that proposition because it is so unusual for any creditor to ever say there was an event of default other than pointing to something in the note. And those two courts, we cite them in our brief, and they both say, you know, unless something's listed as an event of default, it's not an event of default. In those cases, they specifically rejected the notion that repudiation or saying something that you shouldn't have said, that that can be an event of default because it's just not listed. Those are both New York cases, right? They were. They were the only cases we could find, Your Honor. Beyond those two cases, what do the treatises say about this subject? Your Honor, rather than turning to the treatises, I can simply point to this court's controlling authority, Brown v. Evimco, which we cite in our brief, in which this court, through Judge Ferguson, handed down a decision in which they said, we strictly scrutinize default and acceleration because they are draconian. They are so harsh. That's a little bit different. And the question that you're really arguing is more absolute than that, which is that you don't have anticipatory breach in promissory notes. And so I'd like to ask that question to be answered. Do you have any secondary authority that supports that? The United States Supreme Court opinion in Smith, S-M-Y-T-H, which we cite in our brief, dismissed notions that anticipatory repudiation applies to promissory notes. They literally said, and it's not just promissory notes. It was actually a bond, a government bond in that case. But they said, when you have a schedule for payment of money, either you pay the money or you don't pay the money. We're not going to get into arguments about somebody said something I don't like, so I'm going to construe it as an anticipatory repudiation. So let me try to ask you one more time. I'm sorry, I'm not answering your question, apparently. No, no, you aren't. Do you have any, what do the secondary authorities say, the Corbin's of the world or the Amjur's of the world or the Law Review articles of the world? Certainly this is a big commercial issue and people must have written about it. What secondary authority do you have or have you researched about whether you can have anticipatory breach for a promissory note? In Corbin and in Farnsworth on contracts, we cite in our principal brief that they both reject the notion of anticipatory repudiation for promissory notes. Thank you. And they cite the Smith case from the United States Supreme Court. When the pretrial order was entered, the question of law, not a question of fact, but the question of law that was reserved was the court will determine what actually constitutes a breach of the agreement. So Judge Due, as you would expect, and Judge Gould, I know you've written about this, that, you know, when there's an unambiguous instrument before the court, it's a pure question of law to, for the court to apply the meaning of that instrument. So the pretrial order had two fact issues. Our theory, we made payments, which we proved. Their theory, which is they're disavowed. But the court's going to reserve for itself the legal question of what constitutes a breach of these agreements. So the trial starts up, and David Plastino, their expert, who's a pronounced expert, I mean, he knew all about these financial transactions, testified, reviewed 5,000 pages of these transactions. And Mr. Vitullo is counting on him and getting him to admit he had not seen any events of default by the investors, that is, by Molly Hamrick or Beverly Myers. And he said, absolutely not. I have not seen any events of default by them. I've seen events of default by the partnerships because they went insolvent. And I should stop for just a second and explain that if a partnership defaults, normally you turn to partners and your whole partner is liable. But here, there's an assumption agreement where Millennium specifically agreed that the liability of the partners for the partnership would only be the amount of the subscription note and when the subscription note was due. So both the amount and the time of payment were both tied to the subscription note. Millennium agreed to that. And they actually filed a judicial admission. I mean, they were briefing this, and they said, yes, the assumption agreement supersedes partnership laws. Instead of joint and several liability imposed on the partners, the assumption agreement controls. Mr. Plastino was being cross-examined and having to admit that there were no events of default by these investors. Even their own expert didn't recognize this disavowal theory. It's not anywhere in the instruments. He said, people in the financial industry depend on what is written in promissory notes, particularly between sophisticated investors about millions of dollars. At that point, Millennium's counsel stood up and objected and said, judge, whether there's an event of default or not, that's a question of law for the court. You shouldn't be cross-examining this witness on that point. Hard to argue with that. It's in the pretrial order. We didn't argue with it. We simply limit our questions. But you, Mr. Witness, you have not seen anything that you recognize as an event of default. It would seem to be the perfect setup for a Rule 50A motion, the pretrial order reserved to the court, the question of what actually constitutes a breach of the notes. During the trial, the witnesses, the judge is saying, that's a question for me, what actually constitutes a breach. So we stood up and said the same thing we had said in our open remarks to the jury. There's been no event of default that would accelerate any of these notes. We've made our payments. And then they cited Plastino and discussed the evidence. The judge ruled. The judge ruled, and she made her ruling. And don't let her get away from this, because she runs from her ruling. She said there's been evidence of disavowal, and that could be an event of default. So she accepted the legal notion that disavowal could be an event of default. So we go forward with the rest of the trial. We lose. We lose for a very particular reason. These were sophisticated financial ladies who are claiming that they had been defrauded into this, and the jury found that they were sophisticated and they knew what they were getting into. No fraud. They also found that we had breached these agreements. Well, why? Well, during the trial, Millennium would, I mean, frankly, they'd pull a cheap stunt, where they'd turn to the back of an agreement where it says, you know, after it's accelerated, it says immediately due and payable. And they would read that to the jury. These are immediately due and payable. Well, yeah, after there's acceleration because there's been an event of default. Unless the Court has a specific question for me, I'll reserve the remainder. I think we'd like to hear from your advocacy. Thank you. Good morning. Ben Foyer for Appellees, Millennium Grilling, and Jonathan Feldman. You know, the Court began by asking what default is at stake here, and I think that that's a really key question, and I think the appellants have somewhat masked the actual default that's going on here. It's really a very straightforward case. There's a turnkey note that has the Falcon Partnership. If the Falcon Partnership becomes insolvent for any reason, Falcon's debt is immediately due and payable to Millennium. There's an assumption agreement that says if Falcon has a debt that is immediately due and payable and that is not paid, that debt becomes a debt to the partners individually. The appellant said that the assumption agreement ties that default to the subscription note. That's incorrect. The assumption agreement says that the timing of the payment is reliant on the subscription note except as otherwise expressly provided in this agreement. That's at ER-298. And then at ER-299, the assumption agreement says a default occurs if there is any failure to pay an obligation that is owed under the turnkey note, and that makes it immediately due. This Court does not need to get into the subscription note at all. The subscription note only limits the amount of liability each of the individual partners have under the assumption agreement to what they agreed to in the subscription note. But it does not control the timing or the default of payment under the turnkey note and the assumption agreement. So I think that that's really the key critical point. This is a pretty, I think, a pretty straightforward case in that regard. There was also some one thing that did not come up during the appellant's argument is the waiver question between Rule 50a and Rule 50b. I think an easy way to think about the waiver question is that the argument appellants made on their Rule 50a motion is that the quantum of evidence presented was insufficient for the jury to find liability. The argument they made in their Rule 50b motion is that no evidence would be sufficient for the jury to find liability because the issue should be decided as a matter of law. Those are different issues, quite frankly. Those are fundamentally different issues. I think it's very similar to the EEOC against Godaddy case that's controlling precedent in this Court. So I would love to answer any questions the Court has, if there are any. Well, let me make sure I understand the acceleration that made these folks liable took place as a result of whose default and under which agreement. Right. So there were two. There's the turnkey note. This is a note between Falcon, which is the partnership, and Millennium. There's a provision, it's at ER 339, paragraph 8J, that provides the turnkey note is in default if there is an insolvency of the maker. That's Falcon. And then at ER 341, also in the turnkey note, a default makes the obligations immediately due and payable. So at this point we have no dispute. There was testimony at trial that Falcon is insolvent. So there's no dispute about that. At this point, the debt owed by Falcon is immediately due and payable in full to Millennium. Under the assumption agreement at ER 299, it's a paragraph titled Section 3, a default exists if there is a default in any obligation that is owed under the turnkey note. That is the obligation that's immediately due from Falcon to Millennium. And under, at ER 298, paragraph 1.4, the payment timing is per the subscription note, quote, except as otherwise expressly provided in this agreement. And the section that I just mentioned, ER 299, paragraph Section 3, is that express provision in the agreement that the obligation owed by Falcon to Millennium is immediately due. So the partners, the individual partners, the appellants, owe the full amount of their debt pursuant to the assumption agreement. To the assumption agreement. Correct. And the assumption agreement, of course, turns on the turnkey note. But the assumption agreement says that partners can pay, but 1.5 then says that their I mean, are due. But the first part of 1.5, if you're looking at it, says except as otherwise expressly provided in this agreement. I'm getting that. And I'm trying to find that the provision 1.0, Section 3, which is the one you're relying on. Right. That's at ER 299. So Section 3. Correct. So you're saying that the except is otherwise provided in we're now just talking about the assumption agreement. Correct. That you're saying that the 1.5, which ordinarily says you don't have to pay until there's an acceleration of your underlying subscription note, is preceded by the language except as otherwise provided. And you're saying that otherwise provided is Section 3. Correct. So then I'm looking at Section 3 of the assumption note. And it says in the event the participant shall default. And that, of course, is the partnership. The participant in that is the partner, is the appellant, the individual appellant. Shall default on the payment of a subscription note. And, of course, there can't be any default on the subscription note because the subscription note hasn't come due yet. Or in any obligation assumed under this agreement, the participant shall, or in the event of insolvency and so forth. Right. Then the indebtedness assumed under this agreement shall, without notice or demand, become immediately due and payable. I think you've got it. And so you're saying that that modifies the 1.5 payment time. Correct. It doesn't modify it. It follows. It's the only reason that provision would otherwise be. That provision wouldn't make any sense if the only way that the default could occur is under the subscription note. That's why this section 3 exists. In any obligation, in the event the participant should default in any obligation assumed by him under this agreement, that's the falcon debt to millennium. Then going to the end of that paragraph, the indebtedness assumed under this agreement shall, without notice or demand, become immediately due and payable. And I think that that is kind of the period, you know, at the end of this. There's no need to turn to the subscription note or the parsing of that language. And there's no need to really even turn to the assumption agreement or even waiver. I mean, I think the court can kind of affirm on this basis alone. I know this is tricky, so if there are any questions, I'm more than happy to continue. If there be any, we'll hear a response. Thank you. Your Honors, we humbly suggest that that was a complete mischaracterization of what this agreement states. We cited this time of payment provision four times in our brief and quoted it twice. And we wondered, what would be the response? How would they deal with the time of payment provision in the assumption agreements where it says the time of payment is when the notes are due? Look at their brief. They literally will not touch section 1.5, time of payment. The explanation you just heard is nowhere in their brief. Well, but let's focus on it. Well, let's focus on it. We've heard it now. We've heard it now. And what this provision says is unless otherwise agreed. So now he needs to turn to the unless otherwise agreed, and he points to section 3, and section 3 only talks about the participant, not the partnership. It only talks about the participant. Literally, the word partnership appears nowhere in that paragraph. The word is not there. At the beginning of the agreement, it says participant is the investor, the partner, the partnership is the partnership, and this is saying that if a participant defaults, if a participant defaults, then it's due and payable. There was no event of default by the participant. And this is why their own expert did not even recognize their theory. You agree that if the participant, that would be the investors, had defaulted, then their obligations could be due immediately, and you're saying that they didn't default, but they did sign additional obligations under the assumption agreement. They signed the assumption agreement, and it assumed obligations, yes. Yes. And it has a cross-default provision where if they default, if they default like on their subscription note, or if they become insolvent, if they, the participant, does this, if they, the participant, does that, then their debt is then becomes due and payable under the assumption agreement. But it goes back to they have to engage in an event of default. And that is why the motion for judgment hit the nail on the head. But you're saying that they had no obligation to pay any of these additional expenses that have occurred because the IRS challenged or because of other things. And so you're answering on that is that the participants not only didn't default on their original note, but they didn't default on the assumption agreement either. That's correct, Your Honor. But if they had defaulted on the assumption agreement, then you would agree that that would have accelerated their obligations? Yes. Okay. When this Court looks at events of default, it states, this Court has held under Brown v. Vemko, that acceleration is an extremely harsh remedy. You suddenly, I mean, think of any of us who have house loans or car loans. If the bank suddenly calls and says, yeah, that $100,000 that you owe in your house, well, this is California, so I guess I should say, if that million dollars that you owe in your house, it's, you know, you're going to pay it off over 20 years. It's due next week. Hope that's not inconvenient for you to pay us a million dollars next week. That's harsh. This Court said that's harsh. Every Court that has ever looked at it has said this is harsh, except Judge Due. So let's put the subscription, I mean, the original notes off the table for a minute. Your position is that the only other alleged defaults against your investors was, or that your investors committed, was that they didn't make these interim payments that were requested by the partner to help make things solvent? And your position is that there was simply no obligation to make those? The partnership, yes. Yes, Your Honor. Is there any other allegation of default in this case other than anticipatory default of the original promissory notes or actual default by not giving us these supplemental payments that you should have made us when things went south? Keep in mind, Your Honor, there were only two questions of default in the pretrial order that were tried, okay? One is whether they defaulted in payments under the subscription note, and two is whether they disavowed their obligations. Now, we never thought that was an event of default, but those were the only two events of default tried with the Court reserving for itself the judgment as a matter of law as to what would constitute a breach. I realize I'm out of time. If I could finish one thought. Judge Due ran from her own ruling. This case was tried just straight up like you'd expect. They submitted what they said were unambiguous instruments, and the Court said in the pretrial order it was going to rule as a matter of law on the notes. Seven months after the trial, she then decided, actually, you know, I think the jury decided what those notes meant, and you lost. And so when you argued that you weren't in default, you confessed that the jury just got to decide whatever these notes meant. May I just ask one more question? So we're really focusing on this 1.5, except as otherwise provided. But, Your Honor, this is nowhere in their briefs. I understand that. I'm having to respond for the first time. Listen, there's so much in this case that wasn't in the briefs, or that was in one brief and not in another. The record in this case is very frustrating, but we're trying to do the right thing. We're all trying to get this right. But except as otherwise provided in this agreement. So then we go down to the agreement, section 3, and so we see what are the except as provided. Here's the other things that the participant has to do. Number one, if the defendant, if the participant defaults in the payment of the subscription notes. You're saying unequivocally they did not default in the payment of the subscription notes because their payment wasn't due for another 20 years. Second clause, or if the participant's default in any obligation assumed by them under this agreement. You're saying there was no other obligations under this agreement. And so there was no default. And then it says, or in the event they become insolvent or can't pay debts when due. And you're saying none of those things happened because the participants here are solvent. They didn't fail to meet any of their debts. They didn't do things for creditors and so forth. So basically you are not disagreeing with what your opponent says. That there could be things that could accelerate their obligations. But you're saying we agree we will look at section 3. Every single thing that section 3 requires of us, there was no default. Is that a summation of your argument? No, Your Honor. I'm sorry. It is not. Because the pretrial order only looked at two possibilities of events of defaults. You're looking at possibility of events of defaults that were never submitted to the jury. Okay. So you're saying we got to narrow this by what was the way this case was tried. And that puts us into a morass because this case was tried half a dozen different ways. All right. Thank you. Thank you, Your Honor. Thank you. The matter just argued is submitted for decision. We'll proceed. Is it all right to proceed? Please. Okay. We'll proceed to hear the last case on the calendar, which is United States v. Cooper.
judges: Ebel, Schroeder, Gould